IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IGT and IGT CANADA SOLUTIONS ULC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ZYNGA INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs IGT ("IGT US") and IGT Canada Solutions ULC ("IGT Canada") (together, "IGT"), for their Complaint against Defendant Zynga Inc. ("Zynga"), allege the following:

## NATURE OF THE ACTION

1.     This is an action for infringement of United States Patent Nos. 8,708,791; 9,159,189; 7,168,089; 7,303,473; 8,795,064; and 8,266,212 (collectively, the "Asserted Patents"), arising under the patent laws of the United States, Title 35 of the United States Code, including § 271 and §§ 281–285.

## THE PARTIES

2.     Plaintiff IGT US is a corporation organized and existing under the laws of the State of Nevada, having a place of business located at 6355 South Buffalo Drive, Las Vegas, Nevada 89113.

3.     Plaintiff IGT Canada Solutions ULC is a Canadian unlimited liability company organized and existing under the laws of Nova Scotia, having a place of business located at 328 Urquhart Avenue, Moncton, New Brunswick E1H 2R6, Canada.  IGT US and IGT Canada are subsidiaries of International Game Technology PLC, which is listed on the New York Stock

Exchange under the trading symbol "IGT."  IGT is a world leader in gaming entertainment and a leading supplier of casino and lottery machines.

4.     Upon information and belief, Defendant Zynga is a corporation organized and existing under the laws of the State of Delaware, having a place of business located at 12357-A, Riata Trace Pkwy #200, Austin, Texas 78727.

## JURISDICTION AND VENUE

5.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

6.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.     This Court has personal jurisdiction over Zynga because Zynga has a place of business in this District, has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Zynga would not offend traditional notions of fair play and substantial justice.  Zynga has committed and continues to commit acts of infringement in this District by, among other things, developing, making, testing, using, and providing instrumentalities that infringe one or more claims of the Asserted Patents.

8.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b).  For instance, Zynga has a regular and established place of business in at least Austin, Texas, and has committed acts of infringement in this District.

## FACTUAL BACKGROUND

### I.     IGT and Remote Gaming

9.     With more than 12,000 employees worldwide, IGT (NYSE: IGT) enables players to experience their favorite games across various market channels and regulated segments, from gaming machines and lotteries to digital and social platforms.  IGT's gaming solutions anticipate

and meet consumer demands—wherever they choose to play—by leveraging IGT's portfolio of premium and proprietary content, substantial investments in innovation, in-depth customer intelligence, significant operational expertise, and novel, industry-leading technologies. IGT has a well-established presence locally and internationally, including relationships with governments and regulators in more than 100 countries around the world. For more than thirty years, IGT has created and driven value by adhering to the highest standards of service, integrity, and responsibility in the gaming industry.

10.    In addition to IGT's established brick-and-mortar casino and lottery operations, IGT is a world leader and innovator in the markets for remote gaming and social casinos. IGT offers a complete portfolio of award-winning digital gaming products, platforms, and services. With substantial investments in research and development, IGT's solutions are flexible, scalable, and backed by a market-leading technology investment program to ensure players will always catch the next wave of innovation. For example, IGT's Remote Game Server ("RGS") is home to over 100 themed games, including some of the industry's most celebrated titles, such as Cleopatra®, Golden Goddess®, and Wheel of Fortune®. In fact, in May 2017, IGT announced that the RGS would also house the leading online gaming site PokerStars Casino. The RGS contains a vast library of new and proven games and features that ignite player excitement and engagement in markets around the world.

11.    IGT's products and services include, for example, its PlayAnywhere, PlaySports, PlayLottery, PlayPlatform, and PlayService offerings, as advertised on its website:



https://www.igt.com/products-and-services/playdigital.

12.     IGT's PlayAnywhere offerings further include, for example, PlayCasino, PlayPoker, PlayBingo, and PlayInstants:



https://www.igt.com/products-and-services/playdigital/playanywhere.

13.     To protect these and other valuable and proprietary technologies, IGT has heavily invested in acquiring and maintaining its intellectual property, including cultivating a portfolio of approximately 3,400 United States patents and pending applications, and hundreds more in Europe, Australia, and Asia.

## II.     Zynga and the Accused Instrumentalities

14.     Zynga labels itself "a leading developer of the world's most popular social games that are played by millions of people around the world each day."   https://www.zynga.com/ (last visited April 6, 2021).  According to Zynga, "more than one billion people" have played its games "across the Web and mobile" to date.  *Id.*  Upon information and belief, Zynga has made, used, sold, or offered to sell in the United States, or imported into the United States, infringing instrumentalities, including servers and other hardware and software enabling players to play its various game offerings ("Accused Instrumentalities"), including, but not limited to, Zynga Poker, The Wizard of Oz, Game of Thrones, Mustang Money, Hit It Rich, other spin slot machine games, Words With Friends, Farmville, Loyalty Lounge, and other game offerings.

## COUNT I

15.     IGT realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

16.     U.S. Patent No. 8,708,791 ("the '791 Patent") is attached hereto as Exhibit A.  The '791 Patent is entitled "Detecting and preventing bots and cheating in online gaming."

17.     IGT US is the owner of all rights, title, and interest in the '791 Patent, which issued on April 29, 2014.

18.     The '791 Patent is valid and enforceable.

19.     In violation of at least 35 U.S.C. § 271(a), Zynga is liable for direct infringement of at least one claim of the '791 Patent, including without limitation claim 1, having made, used,

sold, offered to sell, or imported into the United States, the Accused Instrumentalities, including, for example, its Zynga Poker offering, which satisfy each and every limitation of one or more claims of the '791 Patent.  Zynga thereby directly infringed and infringes one or more claims of the '791 Patent.

20.     Upon information and belief, in conjunction with its Accused Instrumentalities, Zynga infringed and infringes, for example, claim 1 of the '791 Patent, either literally or under the doctrine of equivalents.

21.     Though preambles generally are not limiting, Zynga performs "[a] gaming method in a gaming system having a plurality of host devices and at least one game server" comprising the steps described below.  For example, the Accused Instrumentalities, including Zynga Poker, allow multiple players to participate in a game using their personal computers, mobile phones, and other personal devices.  The Accused Instrumentalities connect the users to the server that hosts the game.

**Weekly Fast Cash Events**

Compete against other players worldwide in our weekly Fast Cash Events for a chance to win huge prizes!

https://www.zynga.com/games/zynga-poker/ (last visited April 6, 2021).

22.     Claim 1 further recites:  "providing, by plurality of host devices and the at least one game server, an online wagering game[.]"  Zynga, through its Accused Instrumentalities, including Zynga Poker, provides an online wagering game (e.g., Texas Hold 'Em) using the players' host devices or internal Zynga devices used during development and testing, and the server hosting the game.

The world's most popular Poker game with more tables, more tournaments, and more people to challenge than ever before. It's Texas Hold 'Em Poker the way YOU want to play! Zynga Poker is the destination for casino fans and Poker players alike! If you play slots or blackjack, you'll feel right at home in our friendly Poker community!

Play across devices: iOS, Android, Facebook, and zyngapoker.com

 

https://www.zynga.com/games/zynga-poker/ (last visited April 6, 2021).

23.     Claim 1 further recites:  "presenting, by plurality of host devices, game data required for participation in the online wagering game in a format that requires a human interface or the use of pattern recognition methods[.]"   For example, while playing an Accused Instrumentality, such as Zynga Poker, the user is presented with playing card data, level information, wager information, and images of other players that are currently interfacing with that game session.



24.     Claim 1 further recites: "gathering, by the plurality of host devices, game play data while players are using the plurality of host devices to play Internet wagering games[.]"   The Accused Instrumentalities collect certain event and/or player information using, *inter alia*, hooks and cookies to record and track such information.

## ZTrack, An Instrumentation Pipeline

Concurrently with scaling our data repository, we also began to build an instrumentation infrastructure, which we named ZTrack. The main idea of instrumentation is to put hooks in application code that record certain events such as installs, visits, messaging, and any other event that product managers, developers, or analysts deem necessary.

https://medium.com/@kendallwillets/the-zynga-analytics-system-part-1-overview-39c80df694be.

Zynga dedicates people to analyze and design experiments for every game. The tracking points have to be part of every new application they build. Zynga even developed a system called **ZTrack** to be able to track how users interact with the games.

https://towardsdatascience.com/democratize-data-like-zynga-facebook-and-ebay-do-b15a7325c54a (last visited April 6, 2021).

## Collection and Use of Personal Information

When we use the term "personal information" in this Notice, we mean information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household.

In the last 12 months, we have collected the following about consumers for the following purposes.

| Category of Personal Information | Categories of Sources |
|---|---|
| **Identifiers,** such as Account Name, Device ID, Email Address, IP Address, etc. | • Players<br>• Players' Devices<br>• Data Services<br>• Service Providers |

https://www.zynga.com/privacy/ca-notice/ (last visited April 6, 2021).

## Behavioral Cohorting

Zynga heavily utilizes cohort-based analysis. A *cohort* is any group of users isolated by something they have in common, whether that's game install date, age group, or location. At Zynga, product managers also grouped users by their actions or level of engagement with a specific feature, also known as **behavioral cohorting**.

https://blog.amplitude.com/zynga-analytics-at-its-peak (last visited April 6, 2021).

25.     Claim 1 further recites:  "analyzing, by the at least one game server, the game play data to determine individual players' typical gaming styles and times of deviation from the typical gaming styles[.]"  Zynga analyzes the collected data, for example, by "dedicat[ing] people to analyze and design experiments for every game" and by "track[ing] how users interact with the games."

> Zynga dedicates people to analyze and design experiments for every game. The tracking points have to be part of every new application they build. Zynga even developed a system called **ZTrack** to be able to track how users interact with the games.

https://towardsdatascience.com/democratize-data-like-zynga-facebook-and-ebay-do-b15a7325c54a (last visited April 6, 2021). Additionally, Zynga monitors deviations from typical gaming styles, for example, by tracking and identifying instances of hacking, cheating, or violations of Zynga's Terms of Service.

> Zynga proactively tracks sites that host hacks, bots, and cheats and will take appropriate action if hacking, cheating, or violations of the Terms of Service can be positively identified. If you have any information about Zynga hacks, bots, and cheats, and the sites that host them, please report them to Zynga Customer Support.

https://www.zynga.com/security/hacks-bots-and-cheats (last visited Apr. 6, 2021).

26. Claim 1 finally recites: "comparing, by the at least one game server, times of deviation from players' typical gaming styles to determine instances of probable collusion between players." Zynga monitors game play and user data to detect times of deviations from typical gaming styles to determine, *inter alia*, instances of possible collusion between players or other methods of cheating.

If more than one player use the same IP address at the same table, winning or losing chips with amounts outside of the standards according to poker statistics and algorithms will cause you to get caught by Zynga Security filters and your accounts to be monitored. You cannot notice that your account is being monitored. Automated systems made by Zynga take suspicious accounts to Admins for monitoring and approving. After review, the accounts can receive penalties such as TOS and BAN, or pass the review process and continue without any warning.

At Zynga Poker, two different players meeting at different tables constantly can cause accounts to be taken to Admins for a chip transfer examinations and approval. Apart from all these approval reviews, there are security systems that interfere with the hacker attacks that administrators are absolutely sure of. If hackers develop their own clients to manipulate the game and try to cheat by modifying the commands or imitations, in the slightest mistakes that they will make, Admins will detect them, fix the gaps and take the cheater accounts to be banned.

https://www.pokerkedi.com/zynga-poker-cheaters.html (last visited April 6, 2021).

### Why was my account suspended?

Zynga is committed to maintaining a fair poker environment for all players. In order to maintain a safe platform, suspensions are issued by our security team when service violations are detected.

**Outlined are the most common terms of service violations which result in suspension:**

- Posting offensive or infringing content
- Verbally harassing, abusing or harming another person or group
- Participating in table collusion (team play)
- Conducting commercial activity (chip buying and/or selling)
- Using automation software or design cheats

Accounts found in violation of Zynga terms of service will not be reinstated. To refute a suspension, please contact us and supply your account id for review.

Last Updated: 6d • Permalink

https://zyngasupport.helpshift.com/a/zynga-poker/?s=suspended-accounts&f=why-was-my-account-suspended (last visited April 6, 2021).

> Zynga proactively tracks sites that host hacks, bots, and cheats and will take appropriate action if hacking, cheating, or violations of the Terms of Service can be positively identified. If you have any information about Zynga hacks, bots, and cheats, and the sites that host them, please report them to Zynga Customer Support.

https://www.zynga.com/security/hacks-bots-and-cheats (last visited Apr. 6, 2021).

27.    Therefore, Zynga has directly infringed, and continues to directly infringe, one or more claims of the '791 Patent. Zynga has had actual knowledge of the patent and its infringement thereof at least as of service of this Complaint. Despite having knowledge of the patent and its infringement, Zynga continued and still continues to infringe at least one claim of the patent. Thus, Zynga is deliberately, intentionally and willfully infringing the '791 Patent. As a direct result of Zynga's infringing acts, IGT US has suffered and will continue to suffer damages and irreparable harm.

## COUNT II

28.    IGT realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

29.    U.S. Patent No. 9,159,189 ("the '189 Patent") is attached hereto as Exhibit B. The '189 Patent is entitled "Mobile gaming device carrying out uninterrupted game despite communications link disruption."

30.    IGT Canada is the owner of all rights, title, and interest in the '189 Patent, which issued on October 13, 2015.

31.    The '189 patent is valid and enforceable.

32.    In violation of at least 35 U.S.C. § 271(a), Zynga is liable for direct infringement of at least one claim of the '189 Patent, including without limitation claim 1, having made, used, sold, offered to sell, or imported into the United States, the Accused Instrumentalities, including for example, its Mustang Money offering, which satisfy each and every limitation of one or more

claims of the '189 Patent.  Zynga thereby directly infringed and infringes one or more claims of the '189 Patent.

33.    Upon information and belief, in conjunction with its Accused Instrumentalities, Zynga infringed and infringes, for example, claim 1 of the '189 Patent, either literally or under the doctrine of equivalents.

34.    Though preambles generally are not limiting, Zynga performs "[a] remote gaming method" comprising the steps described below.

35.    Claim 1 recites:  "establishing a wireless communications link between a mobile gaming device, operated by a player, and a stationary gaming terminal that carriers out a gaming program[.]"  Zynga, when providing its Accused Instrumentalities, including Mustang Money, establishes a wireless communications link between a user's mobile gaming device and a server in order to carry out the chosen game.

36.    Claim 1 further recites:  "receiving player control signals by the gaming terminal from the mobile gaming device to initiate a game; displaying game animation on the mobile gaming device for the game conveying to the player that the game is presently occurring; carrying out the game by the gaming terminal, including determining a final outcome of the game and any award for the outcome; transmitting signals from the gaming terminal to the mobile gaming device identifying the final outcome of the game and the award; stopping the game animation for the game and displaying, by the mobile gaming device, the final outcome of the game and the award[.]" As shown below, Zynga's Mustang Money, for example, enables a user to play Mustang Money on a mobile device while the user's control signals are received by a server.  The game then displays the game animation on the mobile device.  The Zynga server carries out the game,

including determining an outcome and any award.  At the end of the game, the animation stops

(e.g., the reels in Mustang Money stop), and the final outcome is displayed.



Screenshots of Mustang Money.

37.     Claim 1 further recites:  "in the event of a communications link failure between the

mobile gaming device and the gaming terminal during the game, prior to receiving the signals by

the mobile gaming device identifying the final outcome of the game and the award but after the

game animation for the game has begun, performing the method comprising[.]"  In the event of a

communications link failure, the Accused Instrumentalities perform the steps described below.

38.     Claim 1 further recites:  "extending the game animation for the game by the mobile

gaming device during the communications link failure beyond a typical time for the game until the

communications link has been re-established[.]"  In the event of an interruption (e.g., an

interruption in a user's Wi-Fi connection), the Accused Instrumentalities extend a game animation

during the interruption.  In Mustang Money, for example, the animated reels continue to spin during a communications link failure.

39.    Claim 1 further recites:  "once the communication link has been re-established, transmitting the signals to the mobile gaming device identifying the final outcome of the game and the award, stopping the game animation for the game, and displaying, by the mobile gaming device, the final outcome of the game and the award, such that the game perceived by the player is not interrupted during the communications link failure."  Once the communications link is restored (e.g., restoration of the user's Wi-Fi connection), the animation is stopped and the final outcome of the game including any award is displayed on the screen.  In Mustang Money, for example, upon restoration of a communications link failure, the animated reels cease spinning and the outcome and any score resulting from the user's gameplay is displayed.

40.    Therefore, Zynga has directly infringed, and continues to directly infringe, one or more claims of the '189 Patent.  Zynga has had actual knowledge of the patent and its infringement thereof at least as of service of this Complaint.  Despite having knowledge of the patent and its infringement, Zynga continued and still continues to infringe at least one claim of the patent.  Thus, Zynga is deliberately, intentionally and willfully infringing the '189 Patent.  As a direct result of Zynga's infringing acts, IGT Canada has suffered and will continue to suffer damages and irreparable harm.

## COUNT III

41.    IGT realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

42.    U.S. Patent No. 7,168,089 ("the '089 Patent") is attached hereto as Exhibit C.  The '089 Patent is entitled "Secured virtual network in a gaming environment."

43.     IGT US is the owner of all rights, title, and interest in the '089 Patent, which issued on January 23, 2007.

44.     The '089 Patent is valid and enforceable.

45.     In violation of at least 35 U.S.C. § 271(a), Zynga is liable for direct infringement of at least one claim of the '089 Patent, including without limitation claim 84, having made, used, sold, offered to sell, or imported into the United States, the Accused Instrumentalities, including, for example, its Zynga Poker offering, which satisfy each and every limitation of one or more claims of the '089 Patent. Zynga thereby directly infringed and infringes one or more claims of the '089 Patent.

46.     Upon information and belief, in conjunction with its Accused Instrumentalities, Zynga infringed and infringes, for example, claim 84 of the '089 Patent, either literally or under the doctrine of equivalents.

47.     Though preambles generally are not limiting, Zynga performs, "[i]n a first gaming device, a method of transferring gaming software to a second gaming device" comprising the steps described below. For example, the Accused Instrumentalities, including Zynga Poker, are offered via a game server to a client gaming device. Transferring gaming software is demonstrated at least by using cookies and other technologies to play across multiple devices as the same user.

The world's most popular Poker game with more tables, more tournaments, and more people to challenge than ever before. It's Texas Hold 'Em Poker the way YOU want to play! Zynga Poker is the destination for casino fans and Poker players alike! If you play slots or blackjack, you'll feel right at home in our friendly Poker community!

Play across devices: iOS, Android, Facebook, and zyngapoker.com

https://www.zynga.com/games/zynga-poker/ (last visited April 6, 2021). Additionally, for example, gaming software for Zynga Poker is transferred and loaded when accessed from a client device.



[https://www.zyngapoker.com/](https://www.zyngapoker.com/) (last visited April 6, 2021).

48.    Claim 84 further recites:  "receiving a gaming software transaction request from the second gaming device[.]"  When "Play Now" is actuated at the second gaming device, for example, a request is sent from the second gaming device and is received by the first gaming device.  By proceeding with actuating the "Play Now" button, the second gaming device user has agreed on the "Privacy Policy," which states that the gaming software, including player tracking services, may be transferred to a second gaming device.

49.    Claim 84 further recites:  "sending the gaming software transaction request to a gaming software authorization agent that approves or rejects the transfer of gaming software[.]"  Zynga denies service to players who were previously banned.  Thus, upon information and belief, the Accused Instrumentalities include a gaming software authorization agent that receives the gaming software transaction request and approves or rejects the transfer of gaming software to a second gaming device based upon whether the second gaming device is authorized to access the gaming software.

50.    Claim 84 further recites: "receiving an authorization message from the gaming software authorization agent wherein the authorization message includes information indicating whether the first gaming device is authorized to transfer the game software to the second gaming device[.]"  Upon information and belief, the second gaming device receives a negative message if a player is banned or otherwise is unauthorized to receive the gaming software.  Conversely, if the player is not banned and is otherwise authorized to receive the gaming software, the user may start playing the game after the gaming software is transferred to the second gaming device.

51.    Claim 84 further recites: "transferring the gaming software to the second gaming device."  Zynga transfers gaming software (e.g., cookies, beacons, pixel tags, etc.) for player tracking, meaning the gaming software follows users between devices, including first and second gaming devices.

52.    Therefore, Zynga has directly infringed, and continues to directly infringe, one or more claims of the '089 Patent.   Zynga has been on actual notice that it infringes the '089 Patent. For example, Zynga has had actual knowledge of the patent and its infringement thereof at least since September 25, 2020, when IGT advised Zynga by letter of the patent and its infringement. Despite having knowledge of the patent and its infringement, Zynga continued and still continues to infringe at least one claim of the patent.   Thus, Zynga has deliberately, intentionally, and willfully infringed the '089 Patent, and continues to do so.  As a direct result of Zynga's infringing acts, IGT US has suffered and will continue to suffer damages and irreparable harm.

**COUNT IV**

53.    IGT realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

54.    U.S. Patent No. 7,303,473 ("the '473 Patent") is attached hereto as Exhibit D.  The '473 Patent is entitled "Network gaming system."

55.    IGT US is the owner of all rights, title, and interest in the '473 Patent, which issued on December 4, 2007.

56.    The '473 Patent is valid and enforceable.

57.    In violation of at least 35 U.S.C. § 271(a), Zynga is liable for direct infringement of at least one claim of the '473 Patent, including without limitation claim 22, having made, used, sold, offered to sell, or imported into the United States, the Accused Instrumentalities, including, for example, Zynga's Hit It Rich offering, which satisfy each and every limitation of one or more claims of the '473 Patent.  Zynga thereby directly infringed and infringes one or more claims of the '473 Patent.

58.    Upon information and belief, in conjunction with the Accused Instrumentalities, Zynga infringed and infringes, for example, claim 22 of the '473 Patent, either literally or under the doctrine of equivalents.

59.    Though preambles generally are not limiting, Zynga's Accused Instrumentalities include "[a] website controller that controls operation of a website[.]"  For example, Zynga operates zynga.com, to which a user is connected when the user selects a game, including the Accused Instrumentalities, from a social media platform.  In the game lobby, the user is connected to zynga.com.  Websites, such as zynga.com, are managed by one or more hardware and/or software web servers.  Web servers respond to client requests through HTTP or other protocols and send code, such as HTML, JSON files etc., for execution or utilization on the browsers of client devices.  Upon information and belief, there are multiple web servers owned by, operated by, or operated on behalf of Zynga to which users connect to play the Accused Instrumentalities, such as Hit It Rich.  Accordingly, Zynga servers contain computer program code, including

computer program code portions, that are executable to manage the Accused Instrumentalities, including Hit It Rich.



Screenshot from Game Lobby (indicating that the user is connected to zynga.com).

60.    Claim 22 further recites: "said controller comprising: a processor; a memory operatively coupled to said processor[.]" Web servers typically include at least one processor and memory, which execute code to enable the functionality of the web server. Upon information and belief, Zynga servers include at least one processor and memory operatively coupled to a processor.

61.    Claim 22 further recites: "a first computer program portion stored in said memory that causes data prompting a game selection to be made to be transmitted to a remote player device[.]" Upon selection of a Zynga offering, such as Hit It Rich, on a social media platform, a file, originating on a Zynga server, is sent to the user's device to activate the selected game.

62.    Claim 22 further recites: "a second computer program portion stored in said memory that causes game selection data representing a game selection that is received from said remote player device to be stored in memory[.]"  Zynga servers contain computer code, including computer program code portions, that are executable to manage the Accused Instrumentalities, including Hit It Rich.  When a user selects a game, the underlying code causes the user's selection to be sent to the Zynga server(s) providing the game lobby.  Zygna.com stores user information, such as game selections and statistics in player profiles.  Upon information and belief, Zynga temporarily stores a user's selection in memory in order to process the remaining game functionality, such as selecting and downloading the files necessary to play the selected game.

- your profile photo;
- your first and last name;
- your game username;
- your gender;
- your biographic details (like your age or age range);
- the approximate physical location information that you provide;
- links to your profiles on various social networks;
- details about the games you play; and/or
- a Zynga player ID that is created by Zynga and used to identify your game account (on Zyngagames.com, your Zynga player ID will appear in the URL of your profile page).

Screenshot from Zynga FAQ (detailing user information stored by the Hit It Rich offering).

63.    Claim 22 further recites:  "a third computer program portion stored in said memory that determines whether said data representing said game selection corresponds to said first game or said second game[.]"  Based on the user's selection, the Zynga server(s) enable the user device to connect to one or more content provider servers that provide corresponding gaming files to the user device allowing the user device to execute the selected game.  Zynga server(s) receive the user's game selection and ascertain the game the user selected.

64.    Claim 22 further recites: "a fourth computer program portion stored in said memory that determines whether to select a first gaming computer or a second gaming computer based on said game selection received from said remote player device[.]"  Upon information and belief, the

code for execution of a GET command, for example, is received by the user's device from the Zynga server after the user selects a particular game. For example, if the user selects the game "Terminator," the Zynga server receives the user's selection and sends the corresponding code for the GET command to the user. The user device then connects to the corresponding content server(s) to receive the file bundles for "Terminator." To send the appropriate code for the GET command, the Zynga server would have to identify and select the particular content servers for inclusion in the GET command. Thus, the "determining" step is performed in response to the user's game selection.

65.    Claim 22 further recites: "a fifth computer program portion stored in said memory that facilitates data communication between said remote player device and said first gaming computer that facilitates play of said first game if said game selection data specifies said first game[.]" The Zynga server(s) send the user's device the data used to execute the GET command. Therefore, Zynga server(s) are programmed to facilitate the sending of the bundles to the user device and further include a computer code portion to perform this function. The bundles include data that allows a user to play a selected slot game. Such data may include, but is not limited to, display data and/or pay tables. Display data is used to configure the user's screen for the particular game. Communication of the display data between the user's device and the content servers facilitates game play./

66.    Claim 22 further recites: "a sixth computer program portion stored in said memory that facilitates data communication between said remote player device and said second gaming computer that facilitates play of said second game if said game selection data specifies said second game." The sixth computer program portion mirrors the fifth computer program portion but for the selection of the second game.

67.     Therefore, Zynga has directly infringed, and continues to directly infringe, one or more claims of the '473 Patent.   Zynga has been on actual notice that it infringes the '473 Patent. For example, Zynga has had actual knowledge of the patent and its infringement thereof at least since September 25, 2020, when IGT advised Zynga by letter of the patent and its infringement. Despite having knowledge of the patent and its infringement, Zynga continued and still continues to infringe at least one claim of the patent.   Thus, Zynga has deliberately, intentionally, and willfully infringed the '473 Patent, and continues to do so.  As a direct result of Zynga's infringing acts, IGT US has suffered and will continue to suffer damages and irreparable harm.

### COUNT V

68.     IGT realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

69.     U.S. Patent No. 8,795,064 ("the '064 Patent") is attached hereto as Exhibit E.  The '064 Patent is entitled "Method and apparatus for outputting a message at a game machine."

70.     IGT US is the owner of all rights, title, and interest in the '064 Patent, which issued on August 5, 2014.

71.     The '064 Patent is valid and enforceable.

72.     In violation of at least 35 U.S.C. § 271(a), Zynga is liable for direct infringement of at least one claim of the '064 Patent, including without limitation claim 9, having made, used, sold, offered to sell, or imported into the United States, the Accused Instrumentalities, including, for example, its spin slot machine games, which satisfy each and every limitation of one or more claims of the '064 Patent.  Zynga thereby directly infringed and infringes one or more claims of the '064 Patent.

73.    Upon information and belief, in conjunction with the Accused Instrumentalities, Zynga infringed and infringes, for example, claim 9 of the '064 Patent, either literally or under the doctrine of equivalents.

74.    Though preambles generally are not limiting, Zynga's Accused Instrumentalities, including, for example, Zynga's spin slot machine games, include "[a] method of operating a gaming system" comprising the steps below.

75.    Claim 9 further recites:  "causing at least one processor to execute a plurality of instructions to identify a player placing at least one wager on at least one play of a game[.]"  Web servers typically include at least one processor configured to execute code to enable the functionality of the web server.  Upon information and belief, Zynga servers include at least one processor configured to execute code to play the Accused Instrumentalities, such as Zynga's spin slot machine games.  For example, the Accused Instrumentalities, including the spin slot machine games, allow users to place wagers and play games by clicking the "spin" button.

76.    Claim 9 further recites:  "causing the at least one processor to execute the plurality of instructions to track information associated with the identified player[.]"  The Accused Instrumentalities collect information about players using, *inter alia*, hooks and cookies to gather information.

## ZTrack, An Instrumentation Pipeline

Concurrently with scaling our data repository, we also began to build an instrumentation infrastructure, which we named ZTrack. The main idea of instrumentation is to put hooks in application code that record certain events such as installs, visits, messaging, and any other event that product managers, developers, or analysts deem necessary.

https://medium.com/@kendallwillets/the-zynga-analytics-system-part-1-overview-39c80df694be.

Zynga dedicates people to analyze and design experiments for every game. The tracking points have to be part of every new application they build. Zynga even developed a system called **ZTrack** to be able to track how users interact with the games.

https://towardsdatascience.com/democratize-data-like-zynga-facebook-and-ebay-do-b15a7325c54a (last visited April 6, 2021).

## Collection and Use of Personal Information

When we use the term "personal information" in this Notice, we mean information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household.

In the last 12 months, we have collected the following about consumers for the following purposes.

| Category of Personal Information | Categories of Sources |
| --- | --- |
| **Identifiers,** such as Account Name, Device ID, Email Address, IP Address, etc. | • Players<br>• Players' Devices<br>• Data Services<br>• Service Providers |

https://www.zynga.com/privacy/ca-notice/ (last visited April 6, 2021).

77.    Claim 9 further recites:  "if a first set of information associated with the identified player is tracked and a message trigger condition occurs in association with the identified player: (i) causing the at least one processor to execute the plurality of instructions to determine, based at least in part on the first set of tracked information, a message, and (ii) causing at least one output device to output the determined first message to the identified player[.]"  When a user does not

select the "spin" button for a certain period of time, for example, the player is provided with a message indicating that the user must act to stay in the game.



Screenshot of Game of Thrones Slots Casino.

78.    Claim 9 further recites: "if a second, different set of information associated with the identified player is tracked and the message trigger condition occurs in association with the identified player:  (i) causing the at least one processor to execute the plurality of instructions to determine, based at least in part on the second set of tracked information, a second, different message, and (ii) causing the at least one output device to output the determined second message to the identified player."  When a user is active and making large wagers in a game, for example, the user is provided with a message indicating that there are additional features of the game that allow the user to earn more rewards.



Screenshot of Game of Thrones Slots Casino.

79.    Therefore, Zynga has directly infringed, and continues to directly infringe, one or more claims of the '064 Patent.   Zynga has been on actual notice that it infringes the '064 Patent. For example, Zynga has had actual knowledge of the patent and its infringement thereof at least as of service of this Complaint.   Despite having knowledge of the patent and its infringement, Zynga continued and still continues to infringe at least one claim of the patent.   Thus, Zynga has deliberately, intentionally, and willfully infringed the '064 Patent, and continues to do so.   As a direct result of Zynga's infringing acts, IGT US has suffered and will continue to suffer damages and irreparable harm.

**COUNT VI**

80.    IGT realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

81.    U.S. Patent No. 8,266,212 ("the '212 Patent") is attached hereto as Exhibit F.   The '212 Patent is entitled "Game talk service bus."

82.     IGT US is the owner of all rights, title, and interest in the '212 Patent, which issued on September 11, 2012.

83.     The '212 Patent is valid and enforceable.

84.     In violation of at least 35 U.S.C. § 271(a), Zynga is liable for direct infringement of at least one claim of the '212 Patent, including without limitation claim 24, having made, used, sold, offered to sell, or imported into the United States, the Accused Instrumentalities, such as Words With Friends, that satisfy each and every limitation of one or more claims of the '212 Patent.  Zynga thereby directly infringed and infringes one or more claims of the '212 Patent.

85.     Upon information and belief, in conjunction with the Accused Instrumentalities, Zynga infringed and infringes, for example, claim 24 of the '212 Patent, either literally or under the doctrine of equivalents.

86.     Though preambles generally are not limiting, Zynga's Accused Instrumentalities include "[a] method for distributed gaming over a communication bus[.]"  For example, Zynga allows the Accused Instrumentalities to be played via Zynga.com, mobile applications, and/or social media networking sites, all of which are played over the Internet.

87.     Claim 24 further recites:  "providing a first gaming machine and coupling the first gaming machine to the communication bus[.]"  The Accused Instrumentalities are hosted on Zynga servers, which include a communication bus that allows the servers to connect to the Internet.

88.     Claim 24 further recites:  "publishing, by the first gaming machine, a first high-level function over the communication bus[.]"  The Zynga servers hosting the Accused Instrumentalities, such as Words With Friends, employ billing/payment authorization functionality, for example, that Zynga publishes to the users of the Accused Instrumentalities.

 

Screenshots from Words With Friends.

89.    Claim 24 further recites:  "providing a node coupled to the communication bus[.]"  The Accused Instrumentalities use a node coupled to the communication bus to, for example, authorize payments for in-game virtual items.

90.    Claim 24 further recites:  "receiving, from the node, a request to subscribe to the published first high-level function[.]"  When a user selects the option to purchase a virtual item in the Accused Instrumentalities, such as coins in Words With Friends, for example, the request is received from the node over the communication bus.

91.    Claim 24 further recites:  "accepting the subscription request[.]"  Once received, the Zynga server accepts the subscription request and authorizes the purchase of virtual items.

92.     Claim 24 further recites:  "initiating a gaming session on the first gaming machine[.]"  In the Accused Instrumentalities, including Words With Friends, for example, after a user makes a purchase, the Zynga server(s) initiate a gaming session to provide the user with the virtual items and allow the user to play Words With Friends games.

93.     Claim 24 further recites:  "responsive to updates occurring during the gaming session, providing call backs, by the first gaming machine, the call backs returning a result of the execution of the first high-level function to the node over the communication bus."   After purchasing the virtual items such as coins, a user's gaming session is, for example, updated with the virtual items.  Upon information and belief, the Zynga server(s) determine that a purchase was authorized via call backs to the node via the communication bus.

94.     Therefore, Zynga has directly infringed, and continues to directly infringe, one or more claims of the '212 Patent.   Zynga has been on actual notice that it infringes the '212 Patent.  For example, Zynga has had actual knowledge of the patent and its infringement thereof at least as of service of this Complaint.  Despite having knowledge of the patent and its infringement, Zynga continued and still continues to infringe at least one claim of the patent.  Thus, Zynga has deliberately, intentionally, and willfully infringed the '212 Patent, and continues to do so.  As a direct result of Zynga's infringing acts, IGT US has suffered and will continue to suffer damages and irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, IGT respectfully requests that the Court enter a judgment in its favor and prays that the Court award IGT the following relief:

A.     An entry of judgment that Zynga has infringed one or more claims of the Asserted Patents literally or under the doctrine of equivalents;

B.      An award of damages to be paid by Zynga adequate to compensate IGT for Zynga's infringement of the Asserted Patents;

C.      A finding that Zynga has willfully infringed and is willfully infringing one or more claims of the Asserted Patents, and awarding treble damages due to Zynga's deliberate and willful conduct;

D.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of IGT's reasonable attorneys' fees;

E.      An award of prejudgment and post-judgment interest on all sums awarded as well as costs;

F.      A post-verdict and post-judgment account for infringement of any of the Asserted Patents not otherwise covered by a damages award and the requested injunctive relief; and

G.      The entry of a permanent injunction, pursuant to 35 U.S.C. § 283, enjoining Zynga and its agents, servants, officers, directors, employees, affiliated entities, and all persons in active concert or participation with them from continued infringement of any of the Asserted Patents.

H.      An award to IGT of such further relief at law or in equity as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, IGT respectfully requests a trial by jury on all issues raised in this action for which a trial by jury is available under applicable law.

Dated: April 5, 2021                              Respectfully submitted,

                                                  */s/ Deron R. Dacus*
                                                  Deron R. Dacus
                                                  State Bar No.  00790553
                                                  The Dacus Firm, P.C.
                                                  821 ESE Loop 323, Suite 430
                                                  Tyler, TX 75701
                                                  Phone: (903) 705-1117
                                                  Fax: (903) 581-2543
                                                  ddacus@dacusfirm.com


                                                  */s/ Leif R. Sigmond, Jr.*
                                                  Leif R. Sigmond, Jr.
                                                  Illinois State Registration No.  6204980
                                                  Baker & Hostettler LLP
                                                  One North Wacker Drive, Suite 4500
                                                  Chicago, IL 60606
                                                  Phone: (312) 416-6275
                                                  LSigmond@bakerlaw.com