IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IGT and IGT CANADA SOLUTIONS ULC, | § § | |
| Plaintiffs, | § § | Case No. 1:23-cv-00885-ADA |
| v. | § § | |
| ZYNGA INC., | § § § | |
| Defendant. | § § | |

**ZYNGA INC.'S MEMORANDUM OF LAW**
**REGARDING SUBMISSION OF § 101 TO THE JURY**

**TABLE OF EXHIBITS**

| Exhibit No. | Description | Short Cite in Brief |
|---|---|---|
| Exhibit 1 | Model Patent Jury Instructions (last revised May 2020), Federal Circuit Bar Association, available at https://tinyurl.com/5n8jjrm3 | FCBA Model Patent Jury Instructions |
| Exhibit 2 | Model Patent Jury Instructions (last revised Nov. 2019), American Intellectual Property Law Association, available at https://tinyurl.com/4treexmp | AIPLA Model Patent Jury Instructions |
| Exhibit 3 | Order and Final Judgment Regarding Validity Under 35 U.S.C. § 101, *Motion Offense, LLC v. Dropbox, Inc.*, No. 6:20-cv-00251-ADA (W.D. Tex. May 19, 2023), Dkt. 371 | *Motion Offense* Order |
| Exhibit 4 | U.S. Patent No. 9,159,189 | '189 patent |
| Exhibit 5 | Expert Report of David Crane Regarding Invalidity dated Nov. 10, 2022 | Crane Rpt. |

Defendant Zynga submits the following memorandum of law regarding resolution of Zynga's defense that claims 1 and 10 of the '189 patent are ineligible for patenting under 35 U.S.C. § 101. This memorandum explains why this Court, rather than the jury, should resolve the § 101 issue, including any subsidiary questions of fact as to whether "a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Zynga requests that the Court decide patent eligibility based on the trial evidence and post-trial briefing.

## I.  SECTION 101 SHOULD NOT BE SUBMITTED TO THE JURY AND SHOULD BE DECIDED BY THE COURT POST-TRIAL.

Whether a patent claims patent-eligible subject matter is a question of law. *OIP Tech., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). Although step two of the *Alice* inquiry sometimes involves underlying factual questions, juries rarely decide patent eligibility. Indeed, neither the Federal Circuit Bar Association's Model Patent Jury Instructions nor the American Intellectual Property Law Association's Model Patent Jury Instructions contains a model instruction on eligibility under § 101, although both models were revised about two years after *Berkheimer*.[1] And no caselaw requires a jury, rather than a district court, to find facts at *Alice* step two, as Judge Reyna has observed. *See Berkheimer v. HP Inc.*, 890 F.3d 1369, 1378 (Fed. Cir. 2018) (Reyna, J., dissenting from denial of rehearing en banc). Moreover, when, as here, a case also involves factual questions about whether the asserted patent is invalid for obviousness, "the jury may confuse the obviousness inquiry with the well-understood, conventional, [and] routine inquiry." *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 968 (Fed. Cir. 2018).

Thus, it makes sense for this Court on its own to determine whether claims 1 and 10 of the '189 patent are ineligible under § 101. The Court followed that path recently in *Motion Offense,*

---

[1] *See* Ex. 1, FCBA Model Patent Jury Instructions; Ex. 2, AIPLA Model Patent Jury Instructions.

*LLC v. Dropbox, Inc.*, where it resolved the § 101 defense after a jury trial. *See generally* Ex. 3 (*Motion Offense* Order). Likewise, *Exergen* affirmed the district court's § 101 determination, which it made after trial and which involved the district court's finding facts. 725 F. App'x at 967. That process is analogous to claim construction, where the ultimate question is one of law but "subsidiary factfinding [by a judge] is sometimes necessary." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015); *see also Exergen*, 725 F. App'x at 968 ("[T]here are legal questions in patent cases which can contain underlying factual components such as claim construction to which there is no right to trial by jury.").[2]

## II. THE LAW AND THE TRIAL EVIDENCE WILL SHOW THAT CLAIMS 1 AND 10 ARE INELIGIBLE FOR PATENTING UNDER § 101.

The '189 patent concedes that "[u]sing a wireless hand-held device … to remotely play an otherwise conventional gaming machine in a casino is prior art." Ex. 4, '189 patent at 1:25-27. So for asserted claims 1 and 10, the only claimed improvement over the prior art is that if the hand-held device briefly loses its connection with the gaming machine, the device will continue displaying the "game animation" until "the communications link has been re-established," at which point the device displays the game's "final outcome." In other words, the '189 patent purports to distract the player so he remains "unaware" that the link was disrupted. '189 patent at 4:41-44. Managing a person's attention in this way is a basic means of organizing human activity, and claims 1 and 10 fail both steps of the *Alice* inquiry.

**Step One.** Claims 1 and 10 claim extending the display of ordinary game animation, such as a spinning reel, during the "5 seconds" or "15 seconds" that the communications link might be broken

---

[2] Even if the jury answers the step-two question of whether the asserted claims involve only technology that a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention, the Court will need to resolve—post-trial, as it did in *Motion Offense*—the step-one question of whether those claims are directed to an abstract idea. Whether patent claims are directed to an abstract idea is a purely legal question, and the parties have stipulated not to raise step one of the § 101 inquiry at trial.

if a player walks too far away from the gaming machine. '189 patent at 4:57, 11:26. There is nothing inventive about the animation itself, which has long existed in casino games. And the claims require only generic computer components, such as a "gaming terminal" and a "mobile gaming device," to display the animation.

As for extending the animation during a communication lull, that serves only to maintain the player's attention for a brief period before another event occurs. Extending entertainment to fill time until a result is a "method[] of organizing human activity" that falls within the category of patent-ineligible abstract ideas. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). For example, if the next presenter at an awards show is delayed in getting to the stage, the show's emcee will register the delay and tell jokes to keep the audience's attention until the presenter appears. Similarly, when a televised college football game pauses for commercial breaks, the host school keeps fans in the stadium engaged by having the marching band play a song or by bringing attendees of note onto the field until play resumes. In short, the abstract idea of keeping people entertained during a break in an event "is pervasive in human activity." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). And performing this same method on a generic computer screen is merely "[a]utomation or digitization of a conventional method of organizing human activity," which "does not bring the claims out of the realm of abstractness." *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (similar).

Moreover, claims 1 and 10 lack "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). The claims do not provide any details about *how* the game animation is extended. Instead, they "merely make generic functional recitations" that the extension occurs when the communications link breaks. *Ericsson*, 955 F.3d at 1328. That is not enough to

save the claims from abstraction at step one.

**Step Two.** The result remains the same at step two, because nothing in the claims supplies the inventive concept necessary to "transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

First, as noted above, the '189 patent relies on generic computer components to perform the abstract idea of keeping a person entertained. Claims 1 and 10 both recite, among other things, "a mobile gaming device," "a wireless communications link," and a "gaming terminal." The specification admits that "any suitable mobile device" will suffice, and "most" of its examples use a "conventional tablet." '189 patent at 3:34-37; *see also id.* at 21:59-62 ("the various methods or processes outlined herein may be coded as software that is executable on one or more processors that employ any one of a variety of operating systems"). Claims that "'add' only generic computer components" to an abstract idea "do not satisfy the inventive concept requirement." *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016).

Second, as Zynga's invalidity expert, David Crane, will testify, the '189 patent claims only "well-understood, routine, and conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014). Mr. Crane will explain that "[m]obile gaming devices and stationary gaming terminals have been able [to] communicate with each other to play games, remotely execute games, and display game animations and final results since well before the effective filing date of the '189 patent." Ex. 5, Crane Rpt., ¶ 733-34. The patent itself concedes as much. *Supra* 2. Indeed, it says that the claimed extended animation is nothing more than "a generic animation of blurred symbols moving down vertically to simulate actual reels spinning." '189 patent at 10:35-36. And where a claim's "only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."

4

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

Lastly, cabining the claimed method and system to the casino context does not provide the requisite inventive concept, because "limiting" claims to a "particular technological environment" cannot make them patent-eligible.  *See Elec. Power*, 830 F.3d at 1354 (collecting cases).

\*   \*   \*

As explained above, Zynga respectfully requests that the Court decide, based on the evidence at trial and supporting post-trial briefing, whether claims 1 and 10 of the '189 patent are ineligible for patenting under § 101.

Dated:  September 7, 2023           Respectfully submitted,

By:  */s/ Alyssa Caridis*

Mark D. Siegmund
Texas Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES, PLLC
400 Austin Ave., 9th Floor
Waco, Texas 76701
msiegmund@cjsjlaw.com
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

Clement Seth Roberts, Bar No. 209203 (*Pro Hac Vice*)
croberts@orrick.com
Elizabeth R. Moulton, Bar No. 286937 (*Pro Hac Vice*)
emoulton@orrick.com
Will Melehani, Bar No. 285916 (*Pro Hac Vice*)
wmelehani@orrick.com
Sarah K. Mullins, Bar No. 324558 (*Pro Hac Vice*)
sarahmullins@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5799

>Bas de Blank, Bar No. 191487 (*Pro Hac Vice*)
>basdeblank@orrick.com
>ORRICK, HERRINGTON & SUTCLIFFE LLP
>1000 Marsh Rd.
>Menlo Park, CA 94025
>Telephone: +1 650 614 7400
>Facsimile: +1 415 773 5799
>
>Alyssa Caridis, Bar No. 260103 (*Pro Hac Vice*)
>acaridis@orrick.com
>Isaac S. Behnawa, Bar No. 342441 (*Pro Hac Vice*)
>ibehnawa@orrick.com
>ORRICK, HERRINGTON & SUTCLIFFE LLP
>355 S. Grand Ave., Suite 2700
>Los Angeles, CA 90071
>Telephone: +1 213 629 2020
>Facsimile: +1 213 612 2499
>
>Sten Jensen, Bar No. 443300 (*Pro Hac Vice*)
>sjensen@orrick.com
>William F. Stute, Bar No. 1032093 (Pro Hac Vice)
>wstute@orrick.com
>ORRICK, HERRINGTON & SUTCLIFFE LLP
>Columbia Center
>1152 15th Street N.W.
>Washington, DC 20005
>Telephone: +1 202 339 8400
>Facsimile: +1 202 339 8500
>
>Lauren A. Weber, Bar No. 60909 (Pro Hac Vice)
>lauren.weber@orrick.com
>ORRICK, HERRINGTON & SUTCLIFFE LLP
>401 Union Street, Suite 3300
>Seattle, WA 98101
>Telephone: +1 206 839 4300
>Facsimile: +1 206 839 4301
>
>*Attorneys for Defendant Zynga Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (and any declarations, exhibits, and proposed orders filed concurrently herewith) via email.

>  */s/ Alyssa Caridis*
>  Alyssa Caridis